In re DAKOTA RAIL, INC., Debtor.

Bankruptcy No. 4–88–639.

United States Bankruptcy Court, D. Minnesota.

March 14, 1990.

See also, Bkrtcy., 104 B.R. 138.

---

2. *See* Minn.Stat. § 550.37, subd. 24. (1986).

William J. Joanis, Hart, Bruner & O'Brien, Minneapolis, Minn., for debtor.

Thomas G. Lovett, Jr., Minneapolis, Minn., trustee.

John C. Thomas, Minneapolis, Minn., for Elli Mills and Kimberly Hughes.

## ORDER DENYING MOTION FOR STAY PENDING APPEAL

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 13th day of March, 1990 on a motion by Jerome Ross for an expedited hearing and for a stay of judgment pending appeal. The appearances were as follows: William Joanis and Ronald Orchard for Jerome Ross ("Ross"); and Mark Kalla and John Thomas for Elli Mills and Kimberly Hughes

("Mills/Hughes"). This Court has jurisdiction to hear and finally determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. This is a core proceeding.

By Orders entered February 26, 1990, this Court confirmed the Plan proposed by Mills/Hughes and joined as a co-proponent by the trustee (the "Mills/Hughes Plan"), overruled the objections of the McLeod Regional Rail Authority (the "RRA") to the same, and denied confirmation of the Plan proposed by the RRA (the "RRA Plan"). These Orders were accompanied by an exhaustive, 62 page Memorandum Decision in which the Court explained the factual and legal underpinnings supporting confirmation of the Mills/Hughes Plan and militating against confirmation of the RRA Plan. On March 8, 1990, the RRA and Ross, the sole shareholder and a major unsecured creditor of Dakota Rail, filed a Notice of Appeal to seek reversal of the Orders confirming the Mills/Hughes Plan and denying confirmation of the RRA Plan. Ross then moved for an expedited hearing and for a stay of the Order confirming the Mills/Hughes Plan (the "Confirmation Order"). The record of the motion hearing will reflect that I granted Ross' motion for an expedited hearing.

■ This Court has discretion to grant Ross' motion for a stay of the Confirmation Order pending appeal:

> Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge *may* ... make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

Fed.R.Bankr.P. 8005 (emphasis). Bankruptcy Rule 7062 is made applicable to Ross' motion by Bankruptcy Rule 9014, since the confirmation hearing that is the subject of his appeal constituted a contested matter. Federal Rule of Civil Procedure 62(d), which is made applicable by Bankruptcy Rule 7062, mandates that a stay must be granted if the appellant files a bond sufficient to protect the interests of adverse parties. Bankruptcy Rule 8005, however, grants this Court discretion to grant or deny a stay, notwithstanding the mandate contained in Rule 62(d).[1] *In re Rhoten*, 31 B.R. 572, 577 (M.D.Tenn.1983).

■ When determining whether to grant a stay under Bankruptcy Rule 8005, the Court must weigh four factors:

1) the likelihood that the appellant will be successful on the merits of the appeal;

2) the injury that the appellant would sustain injury if the judgment were not stayed;

3) the injury that the appellee would sustain if the judgment were stayed; and

4) the impact on the public interest if the judgment were stayed.

*In re Howley*, 38 B.R. 314, 315 (Bankr.D. Minn.1984). An appellant's failure to persuade the Court regarding any one of these factors can be sufficient grounds for denying a stay. *John P. Maguire & Co. v. Sapir (In re Candor Diamond Corp.)*, 26 B.R. 844, 847 (Bktcy.S.D.N.Y.1983). In most situations, however, the Court will treat these factors as interests to be considered and balanced in deciding whether to grant a stay rather than as absolute prerequisites for a stay. *In re Charter Co.*, 72 B.R. 70, 72 (Bktcy.M.D.Fla.1987). After considering these four factors, I conclude that staying the Confirmation Order would be inappropriate.

*Likelihood of Success on the Merits*

It appears that Ross and the RRA are unlikely to succeed on the merits of his appeal. The length of the Memorandum Decision is indicative of the factually intensive nature of the confirmation hearing, and the appeal almost exclusively raises

---

**1.** Because of the conclusion I reach below regarding the appropriateness of a stay, I need not decide whether the requirement of a bond imposed by Rule 62 is abrogated by Bankruptcy Rule 8005. If I had concluded that Ross was required by law to file a bond, I would have required the bond to be in the amount of at least $800,000 to cover depletion of the railroad's cash reserve and lost payments to creditors that could result from the delay engendered by the stay. The trustee's bond does not protect against such eventualities.

issues regarding the accuracy of factual determinations made therein. The Court's findings of fact must be sustained on appeal unless the reviewing court concludes that they were "clearly erroneous." *Worthen Bank & Trust Co. v. Hilyard Drilling Co. (In re Hilyard Drilling Co.),* 840 F.2d 596, 599 (8th Cir.1988). The reviewing court must accept the findings unless it is left with a "definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Of particular importance to my decision to confirm the Mills/Hughes Plan was my assessment of the lack of credibility of the RRA's witnesses and the credibility of the witnesses testifying on behalf of Mills/Hughes. Such assessments of credibility are especially entitled to deference on review:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013. Consequently, there is little chance that Ross and the RRA will prevail in their challenges to my findings of fact.

As for the few legal issues raised by Ross and the RRA, they concern carefully explained conclusions that are well grounded in the language of the Bankruptcy Code and the relevant legislative history. Although neither side nor the Court could find significant case law interpreting the relevant Code provisions, I do not consider the absence of such to be troublesome, since the relevant provisions did not require complex analysis to interpret. Railroad reorganization cases are not common, certainly not before this Court, and consequently there are few reported cases on the subject. I am, however, frequently called upon to interpret Code provisions regarding reorganizations in general and the valuation of debtors' operations specifically, and to apply such provisions to the facts of complicated reorganization cases. To me, there appear to be no reasonable interpretations of the relevant Code provisions other than the ones I reached. Consequently, I believe there is little chance that Ross and the RRA will prevail on the legal issues they have raised on appeal.

*Injury to Appellant*

Nor has Ross demonstrated that he would suffer substantial harm if the Confirmation Order were not stayed. Ross argues that his appeal will be mooted if the Confirmation Order is not stayed and Mills/Hughes are permitted to substantially consummate their Plan. But the mooting of his appeal is not sufficient, by itself, to establish that Ross will be injured by denying the stay. *In re Charter Co.,* 72 B.R. at 72 (citing *In re Great Barrington Fair & Amusement, Inc.,* 53 B.R. 237, 240 (Bktcy.D.Mass.1985); *In re Baldwin United Corp.,* 45 B.R. 385, 386 (Bktcy.S.D.Ohio 1984)). Ross, however, alleges that if the Mills/Hughes Plan is consummated, then he will never be paid for his equity interest and will never receive interest on his unsecured claim. This alleged injury is highly speculative, if not nonexistent.

The Mills/Hughes Plan is the only confirmable Plan before this Court. Ross and the RRA have proposed a number of plans, none of which were confirmable, and it is unlikely that either of them will be able to propose a confirmable plan in the future. There is no prospect of anyone else proposing a confirmable plan. Thus, if the Confirmation Order is stayed, one of two results will almost certainly occur: 1) confirmation of the Mills/Hughes Plan will be affirmed, in which case the alleged harm to Ross will occur anyway; or 2) Dakota Rail will be liquidated.

I have previously found, based on authoritative and credible testimony of Mills/Hughes' expert witnesses, that if Dakota Rail were liquidated, there would be no equity for Ross to receive, and there would not be sufficient assets from which to pay interest on Ross' unsecured claim. In fact, Ross would not get paid the full principal of his unsecured claim upon liquidation. Therefore, unless my finding on liquidation value was grossly in error, Ross will be no worse off financially if consum-

mation of the Mills/Hughes Plan proceeds than if it does not.

■ Furthermore, even if I concluded that Ross would suffer substantial harm if no stay were granted, that alone would not be sufficient to justify my granting a stay. As I have concluded above and will conclude below, Ross has neither demonstrated a likelihood of success on the merits nor shown that others will not suffer substantial harm as a result of the stay. Therefore, granting a stay would be inappropriate, since the other factors outweigh any alleged harm to Ross. *In re Sung Hi Lim,* 7 B.R. 319, 322 (Bktcy.D.Haw.1980).

### Injury to Appellees

Mills/Hughes would suffer substantial harm if the Confirmation Order were stayed and subsequently is affirmed on appeal. If Mills/Hughes are still willing consummate their Plan following many more months of delay while the case was on appeal, they will acquire a railroad in significantly worse shape than that for which they bargained. During the pendency of the appeal, Dakota Rail will continue take in less in income from shipping revenue, lease revenue and other operating revenue than the cash expenses it will incur during the same period. As a result, the railroad's cash reserve, which Mills/Hughes require to consummate their Plan, would be substantially depleted. The cash reserve would be further depleted by ongoing administrative expenses. The depletion of the cash reserve, along with the delay in implementing Mills/Hughes' proposals to improve the line's condition [2] and their strategies for bringing new business to the railroad, would increase the chance of failure for the reorganized railroad. Such a failure, in turn, would likely cause Mills/Hughes to lose their $500,000 proposed investment. But the sharply increased prospect of failure might cause Mills/Hughes to "walk away" from con-

summation of their Plan, in which case they would lose over $100,000 in legal and witness fees and other expenses incurred to date.

### Impact on the Public Interest

■ Most importantly, staying the Confirmation Order would adversely affect the public interest. The adverse impact on creditors of staying a confirmation order pending appeal weighs strongly against granting such a stay in any reorganization case that has dragged on for a number of years, as the instant case has done. *In re East Redley Corp.*, 20 B.R. 612, 615 (1982). In railroad reorganization cases, the impact of a stay on the public interest in continued rail service assumes even great importance:

> The third and fourth requirements—the absence of harm to other interested parties and to the public interest—may be combined. Section 1165 of title 11, United States Code charges the court and the trustee with considering the public interest.
>
> . . . .
>
> Part of the public are also interested parties—they are the customers [and] holders of leases and contracts. . . .
>
> Should a stay be granted, each and every one of the interested parties and the public in general would be harmed in as much as [the railroad] would no longer be in a position to reorganize.

*In re Delaware & Hudson Railway Co.*, 90 B.R. 90, 91 (Bktcy.D.Del.1988). The *Delaware & Hudson Railway* court concluded that the harm to the public interest resulting from a stay pending appeal was fatal to the appellant's motion for such a stay. *Id.*

As I concluded above, staying the Confirmation Order would greatly increase the chance that the reorganized railroad would fail, or it might cause Mills/Hughes to pick up their proposed investment and "walk away," in which case the railroad would almost certainly be liquidated. Under ei-

---

**2.** Most important among these proposals is implementation of the "Phase II" improvements. Elli Mills testified at the hearing that following entry of the confirmation order he and Ms. Hughes have had discussions with State officials, and that the State officials indicated that

they were willing to work with Mills/Hughes to fund and implement Phase II. But Phase II funding would be delayed if a stay were granted, since the State has declared that it will not provide funding as long as the railroad is in bankruptcy.

ther scenario, the public interest of continued rail service would be thwarted, and the creditors who would be paid if the Mills/Hughes Plan were consummated now would receive reduced payments at some undetermined future date, if they would receive any payments at all. In light of these dire consequences, I must conclude that staying the Confirmation Order would be inappropriate.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. The motion of Jerome Ross for a stay of the Order confirming the Mills/Hughes Plan pending appeal is denied;

2. The undersigned will be available from between 10:00 a.m. and 2:00 p.m. on March 15, 1990 for a telephonic hearing on any interim relief that Jerome Ross might seek pending application to the District Court for a stay of the Confirmation Order. Counsel shall confer among themselves to determine who among them shall initiate the conference call.