**In re David MOREAU and Darlene Moreau, Debtors.**

**BENEFICIAL HOMEOWNER SERVICE CORP., Appellant,**

v.

**David MOREAU and Darlene Moreau, Appellees and Debtors.**

No. 91–CV–1094.
Bankruptcy No. 90–13374.

United States District Court, N.D. New York.

Jan. 9, 1992.

the Southern District of New York would be proper because the suit could have been commenced in that forum.

Solomon and Solomon (Douglas M. Fisher, of counsel), Albany, N.Y., for appellant.

Carter Conboy Bardwell Case Blackmore & Napierski (James P. Trainor, of counsel), Albany, N.Y., for appellees-debtors.

## MEMORANDUM–DECISION & ORDER

McCURN, Chief Judge.

Creditor Beneficial Homeowner Service Corp. ("Beneficial") appeals from two separate but related orders of the United States Bankruptcy Court for the Northern District of New York (Mahoney, *J.*), in which the court (1) ruled that the debtors, David and Darlene Moreau, could modify the terms of their indebtedness to Beneficial pursuant to 11 U.S.C. § 1322(b)(2) (West Supp.1991), and (2) confirmed the Moreau's Chapter 13 plan without conducting a new, up-to-date valuation hearing.[1] This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) (1988).

The matter is now before the court on Beneficial's motion for a stay of the Bankruptcy Court's confirmation order pending this court's ruling on the appeal therefrom. Hence, although the court may ultimately have to wrestle with issues raised in both appeals, the intant matter relates only to Beneficial's motion for a stay of the confirmation order.[2]

## I. FACTS

The facts giving rise to these appeals are relatively straightforward and uncontested. On April 28, 1989, appellant Beneficial extended a loan to the appellees, the Moreaus, in the amount of $39,000.00. On January 8, 1990, Beneficial extended a second ("supplemental") loan to the Moreaus in the amount of $13,000.00. Thus, the Moreaus were indebted to Beneficial for two loans totalling $52,000.00. Both loans were secured by a mortgage on the Moreau's real property, located in Mayfield, Fulton County, New York.[3]

The circumstances accompanying the loan agreement and mortgage give rise to a large part of the controversy now before the court. Specifically, simultaneous to the execution of the loan agreement and mortgage, the Moreaus obtained "credit life insurance" for the benefit of Beneficial. Under the policy's terms, the proceeds would be paid to Beneficial upon the death of the

1. Beneficial's appeal from the confirmation order was originally assigned to Judge Cholakis. Noting that the two appeals are related, this court ordered that the appeal from the confirmation order be transferred here.

2. Beneficial's motion for a stay of the Bankruptcy Court's first order (allowing the Moreaus to amend the terms of their indebtedness to Beneficial) was denied first by the Bankruptcy Court, and subsequently by Judge Munson. Judge Munson also denied Beneficial's motion for reconsideration of the denial.

3. In a memorandum decision dated May 7, 1991, Judge Mahoney ruled that the Moreaus' mobile home situated on the property is attached to the realty, *i.e.* is a permanent accession, so as to become a fixture subject to the terms of the mortgage.

debtors to discharge the underlying indebtedness. The Moreaus included payments for the policy in their monthly mortgage payments to Beneficial.

On November 16, 1990, the Moreaus filed a voluntary joint petition for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301–30 (1988 & West Supp.1991). About three weeks later, during the course of the Chapter 13 proceedings, Beneficial filed a Proof of Claim for $54,708.92, based upon the amount owing on the original notes plus interest. The bankruptcy court held a valuation hearing in April, 1991, after which it determined that the secured value of the mortgaged property was $33,192.00. The Moreaus thereafter submitted an amended Chapter 13 plan that treated Beneficial's debt as a secured claim only to the extent of the $33,192.00, the rest of the debt being unsecured. Beneficial, in turn, moved to dismiss the case pursuant to 11 U.S.C. § 1307 (West Supp.1991). The bankruptcy court denied the motion to dismiss and, after some procedural modifications, confirmed the amended plan on November 12, 1991, pursuant to 11 U.S.C. § 1325 (1988 & West Supp.1991).

As a result of the bankruptcy court's confirmation of their plan, the Moreaus have taken steps in anticipation of satisfying their debt obligations to Beneficial. The Moreaus intend to refinance their indebtedness to Beneficial, so as to satisfy Beneficial's secured claim based on confirmation of Debtors' Modified Chapter 13 Plan. Fisher Aff. (12/23/91), at ¶ 6. The Moreaus' strategy is controversial because it is designed to pay Beneficial only that secured indebtedness contemplated in the confirmed plan, i.e. $33,191.92. That would leave Beneficial with a loss of $21,516.92 on the debt.

Beneficial filed these appeals from the two orders of the bankruptcy court. In the first, Beneficial relies on 11 U.S.C. § 1322(b)(2) (West Supp.1991) to argue that the bankruptcy court improperly allowed the Moreaus to modify the terms of their indebtedness to Beneficial. In the second, Beneficial argues that the bankruptcy court, in confirming the Moreaus' amended plan on November 12, 1991, erroneously (1) failed to issue new findings of fact as to the value of the Moreau property, by summarily holding that Beneficial was not entitled to a new valuation hearing, and (2) failed to find that the Moreaus acted in bad faith when they previously warranted to the court an exceedingly low value of their property. The second appeal was prompted by Beneficial's discovery that the Moreaus, in seeking refinancing, warranted to the "re-financier" (Statewide Funding) that the value of their property is actually $65,-000.00, and that re-financier's independent assessment of the property determined the value to be as high as $77,500.00. Beneficial argues that the bankruptcy court erred in not considering the higher assessed value of the Moreau property, which would have compelled the conclusion that the Moreau's entire indebtedness to Beneficial was secured by the property.

## II. DISCUSSION

There are three matters now before the court:

A. Beneficial's motion for a stay of judgment pending this court's ruling on the appeal;

B. Beneficial's appeal of the order allowing the Moreaus to modify their Chapter 13 plan; and

C. Beneficial's appeal of the bankruptcy court's failure to conduct a new valuation hearing.

Only the first matter, concerning the stay, is immediately at issue. On December 26, 1991, this court issued a temporary restraining order enjoining all parties from acting in furtherance of Judge Mahoney's confirmation order, pending determination of this motion to stay. Beneficial's motion for a stay is based in large part in its assertion that the Moreau's refinancing of their debt pursuant to the confirmation order will foreclose Beneficial's opportunity to gain relief through this appeal, and force Beneficial to accept satisfaction of Moreau's debt at a significant loss.

The rule governing motions for a stay pending a bankruptcy appeal is set forth in

Bankruptcy Rule 8005 (West Supp.1991) ("Stay Pending Appeal"). That rule states, in pertinent part:

A motion for a stay of judgment, order, or decree of a bankruptcy judge ... or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.... A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court....

Bankr.R. 8005.[4]

■■■ Before considering the merits of Beneficial's motion for a stay, the court must first determine whether Beneficial has satisfied Rule 8005's procedural threshold, *to wit* presentation of this application to the bankruptcy court or a tenable explanation for why this application is not before the bankruptcy court. *See* Rule 8005; *In re Petrusch,* 14 B.R. 825, 826 n. 1 (N.D.N.Y.) (McCurn, J.), *aff'd,* 667 F.2d 297 (2d Cir.1981), *cert. denied,* 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982); *In re Drislor Assoc.,* 110 B.R. 937, 939 (D.Colo. 1990). Beneficial has satisfied this requirement. In his affidavit in support of Beneficial's motion for a stay pending appeal, Beneficial's counsel averred that "Judge Mahoney has specifically stated that he will not stay his own Orders...." Fisher Aff. ¶ 12. In so attesting, Beneficial has satisfactorily shown why it has not sought a stay in bankruptcy court. Judge Mahoney's apparent blanket policy against staying his own orders would render futile an attempt to seek a stay in that court, and thus justifies Beneficial's motion in this court for a stay pending appeal.

■■■ Rule 8005 is itself of no assistance in terms of lending guidance as to when a stay is appropriate. Fortunately, courts interpreting the rule have set forth uniform standards applicable to motions for stays. In considering whether to grant a stay, this court must balance the following four factors:

1. whether Beneficial is likely to succeed on the merits of its appeal;

2. whether Beneficial will suffer irreparable harm if the stay is denied;

3. whether the harm which Beneficial would suffer as a result of no stay outweighs the potential injury to the Moreaus if a stay is granted; and

4. whether the stay would serve the public interest.

*E.g. Drislor Assoc.,* 110 B.R. at 939; *Sandra Cotton v. Bank of New York,* 64 B.R. 262, 263 (W.D.N.Y.1986); *In re Cretella,* 47 B.R. 382, 383–84 (E.D.N.Y.1984); *In re Dakota Rail, Inc.,* 111 B.R. 818, 820 (Bankr.D.Minn.1990); *In re Microwave Prod. of America,* 102 B.R. 659, 660 (Bankr.W.D.Tenn.1989); *In re Intermet Realty Partnership,* 27 B.R. 938, 939 (Bankr.E.D.Pa.1983). Balancing of the four factors in this case indicates that a grant of stay is warranted. The factors will be discussed *seriatim.*

### A. Likelihood of success on the merits

Beneficial's argument that the bankruptcy court erred in not conducting a new valuation hearing shortly before confirming the Moreau's plan is grounded in 11 U.S.C. § 1325(a)(5) (1988 & West Supp. 1991) ("Confirmation of the Plan"). That section of Chapter 13 requires the court to confirm a plan if, *inter alia,* the plan assures that a holder of a secured claim in property will receive at least the value, *"as of the effective date of the plan,"* of the amount of his secured claim. *Id.* (emphasis

---

4. This rule is different from Fed.R.Civ.P. 62, which governs stays pending non-bankruptcy appeals. To the extent that the two rules are different, the court is obliged to follow Rule 8005, and not Fed.R.Civ.P. 62, in considering stay of a bankruptcy judgment or order. *See, e.g. In re Neisner Bros., Inc.,* 10 B.R. 299, 300 (Bankr.S.D.N.Y.1981) (analysis under former Rule 805, which is the direct predecessor to Rule 8005).

added).[5] This statute clearly requires the bankruptcy court, in considering confirmation of a plan, to make a determination of the value of secured property as of the effective date of the plan. The bankruptcy court's inquiry must thus focus on the "effective date" of the plan.

Beneficial has persuaded the court, at least for purposes of its motion for a stay, that the "effective date" of the plan is the confirmation date of the plan. Beneficial's interpretation seems consistent with the literal interpretation of the statutory language; a plan is usually "effective" on the date of confirmation. *In re Blakey*, 76 B.R. 465, 469 n. 5 (Bankr.E.D.Pa.1987), *vacated and amended on reconsideration on other grounds*, 78 B.R. 435 (Bankr. E.D.Pa.1987). More importantly, Beneficial's argument comports with the case authority having addressed the point. Courts have been nearly universal in their statements that valuation hearings should be held in close proximity to the confirmation date. *See, e.g., In re Jablonski*, 88 B.R. 652, 655 (E.D.Pa.1988); *In re Seip*, 116 B.R. 709, 709–12 (Bankr.D.Neb.1990); *In re Anderson*, 88 B.R. 877, 884 (Bankr. N.D.Ind.1988).

Two cases cited by Beneficial are especially persuasive on this point. In *In re Seip*, 116 B.R. 709, the court noted that the purpose behind determining value is to assist in hearings on the disposition of the property. In fact, section 506(a) of the Bankruptcy statute (governing valuation hearings) *mandates* that value determinations be made "in conjunction with any hearing on ... disposition or use or on a plan concerning [the] creditor's interest." 11 U.S.C. § 506(a) (1988). The very purpose behind conducting a valuation hearing would be eviscerated if the hearing is held so far in advance of confirmation so as to allow the property values at issue to change during the interim. The most equitable distribution simply cannot be achieved if the assumed value of the property upon distribution differs from its actual value. *Seip*, 116 B.R. at 711 (citing *Ahlers v. Northwest Bank Worthington*, 794 F.2d 388, 399 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)). In light of the purpose behind valuation, and the express statutory language, this court agrees with the *Seip* court's conclusion that "the collateral securing a creditor's claim should be valued at a date in close proximity to the confirmation date." *Id.* at 712.

In *In re Blakey*, 76 B.R. 465 (Bankr. E.D.Pa.1987), the court discussed—albeit briefly—the rationale behind conducting a valuation hearing in close temporal proximity to the confirmation hearing. The court noted that "significant lapses of time can transpire between the filing [of a Chapter 13 petition] and confirmation, and ... changes which occur to the secured property during the lapse of time should be discounted." *Blakey*, 76 B.R. at 468 (footnote omitted). The court made specific reference to a scenario it faced one year earlier, in *In re Mitchell*, 75 B.R. 593 (Bankr. E.D.Pa.1987), in which a garage on the premises of secured property was destroyed by fire during the time period between the date of the filing of the petition and the prospective date of confirmation. There was no fair basis, the court concluded, for utilizing the pre-fire valuation of the premises in determining the creditor's secured interest in the property. *Blakey*, 76 B.R. at 468 n. 4.

The *dicta* in both *Seip* and *Blakey* is so persuasive because it addresses circumstances like the present, in which there is credible evidence suggesting that the value of secured property at the confirmation date may have been different than the orig-

---

**5.** Section 1325(a)(5)(B)(ii) states:
  (a) The court shall confirm a plan if—

    .    .    .    .    .

  (5) with respect to each allowed secured claim provided for by the plan—

    .    .    .    .    .

   [ (B) ](ii) the value, as of the effective date of the plan, of property to be distributed un-

der the plan on account of such claim is not less than the allowed amount of such claim....

inally-determined value. The value of the property at issue here, *to wit* the Moreau's real estate, was determined at an April, 1991 valuation hearing to be $33,192.00. Five months later, and still before the confirmation hearing took place, the Moreaus estimated—in writing—that the value of their property was $65,000.00. Statewide Funding, the re-financier which conducted an independent assessment of the property, determined the value to be as high as $77,-500.00. Statewide Funding's assessment is particularly noteworthy because Statewide is presumably an independent and objective "third party," without any clear motive to inflate the value of the Moreaus' property. If anything, Statewide might be expected, for investment and security purposes, to undervalue the Moreau's property. In other words, the bankruptcy court had at least some credible evidence that the value of the Moreau's property was significantly higher than the value assessed seven months earlier.

Statewide's valuation of the property at $77,500.00, especially when considered in conjunction with the Moreaus' "concession" as to their property's actual value, is conspicuous to say the least. The newly-revealed values of the Moreau property imply that some event must have occurred between the April valuation hearing and the November confirmation date so as to more than double the value of the property in which Beneficial held a security interest.[6] Without definitively ruling on the merits, the court finds that the case authority, as well as common sense, strongly suggest that the bankruptcy court should have taken note of the discrepancy in property values and conducted a new valuation hearing. After the hearing, adjustments may be necessary to accommodate for any increase or decrease in value of secured property which may have occurred during the time between the valuation hearing and confirmation. *In re Klein*, 10 B.R. 657, 661 (Bankr.E.D.N.Y.1981). Only then could the court have assured an equitable distribution of the property between debtors and creditors. In sum, Beneficial has a strong likelihood of success on the merits of this appeal.[7]

### B. *Irreparable harm*

Beneficial most succinctly states its case for irreparable harm in the following two paragraphs:

7. Debtors' counsel indicates that Debtors intend to use refinancing from Statewide Funding to pay off Appellant's "secured claim based on confirmation of Debtor's Modified Chapter 13 Plan.["] This action by the Debtors, if successful, would require Appellant to release and satisfy the subject real estate mortgage in the Debtors' principal residence.

8. If the requested Stay Order herein is not granted, the Appellant will suffer irreparable injury in that the Appellant's claim based on its note and real estate mortgage in the Debtors' residence would be prejudiced and substantially reduced by the intended action of the Debtors contrary to 11 U.S.C. Sections 1325(a)(3) and 1325(a)(5)(B)(ii). Such a refinancing and payment would render the pending appeal before the United States District Court meaningless because Appellant's "secured claim" would be "satisfied" by such a refinancing mechanism.

Fisher Affidavit in Support of Emergency Motion for Stay Pending Appeal (12/23/91) ¶¶ 7–8 ("Fisher Aff."). In sum, absent a

---

**6.** Beneficial suggests that the discrepancy is due to the Moreaus' bad faith. That may be the case, but the court can avoid that messy issue because it is clear, at least for purposes of this motion, that the Bankruptcy Court should have conducted a new valuation hearing, closer to the confirmation date.

**7.** At oral argument, the Moreaus' counsel argued that Beneficial's appeal is without merit in part because it is based on an alleged erroneous valuation, and as such should have been filed at the time of the valuation hearing. The Moreaus' argument in this respect is not persuasive in light of today's conclusion. As discussed above, § 1325(a)(5)(B)(ii) requires that valuation occur "as of the effective date," which this court takes to mean the confirmation date. In other words, Beneficial would have to wait until the "effective date" to see whether the Bankruptcy Court utilized the correct property value. Until the effective date, Beneficial's appeal would not have been ripe for review.

stay, the Moreaus will go forward with their refinancing plan, and Beneficial will be forced to accept satisfaction of the Moreaus's debt at a loss of $21,516.92. The Moreaus acknowledge that their satisfaction of the debt to Beneficial would render this appeal moot.

It is clear that the danger of an appeal becoming moot is by itself never a sufficient ground to justify grant of a stay. *E.g. In re Public Serv. Co. of New Hampshire,* 116 B.R. 347, 350 (Bankr.D.N.H. 1990) (citations omitted); *In re Dakota Rail, Inc.,* 111 B.R. 818, 821 (Bankr. D.Minn.1990) (citations omitted). It is equally clear, however, that the risk of mootness is not in itself the only injury that Beneficial would suffer here if its motion is denied. Once the Moreaus refinance their debt and satisfy their obligation (as determined by the bankruptcy court) to Beneficial, Beneficial will be at a loss of over $20,000.00. Ordinarily, the risk of mere monetary loss would not constitute irreparable injury, because the prevailing appellant can usually be adequately compensated by legal damages for the loss. *Cotton v. Bank of New York,* 64 B.R. 262, 263 (W.D.N.Y.1986). In this case, however, the Moreaus fragile financial status is such that the existence of an adequate remedy at law for Beneficial—in the event that Beneficial prevails on this appeal—would be improbable absent a stay. After all, the Moreaus would not likely not be in their current state if they were able to produce $21,516.92 on request. Perhaps most significantly, the Moreaus have not contended that Beneficial's loss would be other than irreparable.

The circumstances of this bankruptcy case, particularly the Moreaus' financial status, is such that the court can safely conclude that Beneficial's loss of $21,516.92 would be irreparable.

### C. Balance of hardships

If the Moreaus will suffer any hardship from a stay of the bankruptcy court's judgment, they certainly have not brought it to the court's attention. The Moreaus filed their Chapter 13 petition more than a year ago, and have apparently managed without having a confirmed plan until this past November. Moreover, as of December 26, 1991 (the date the court signed a TRO enjoining the Moreaus from acting on the confirmation), the Moreaus had still not effectuated their confirmed plan. Thus, the Moreaus cannot seriously claim that a delay (as a result of the stay) in their ability to effectuate their Chapter 13 plan would be too harmful.

Having filed a petition for bankruptcy under Chapter 13, the Moreaus enjoy financial protection from their creditors. It is difficult to understand how an extension of time on their protection would cause them to suffer any hardship. To the extent that the Moreaus would suffer some hardship, the hardship would not outweigh the irreparable harm that Beneficial would suffer from a denial of its motion for a stay. *See* discussion of Beneficial's irreparable harm, *supra* pp. 214–215. Hence, the balance of hardships tips in favor of granting a stay.

### D. Public interest

In considering the public interest, this court is concerned in large part with the interests of third-parties who act in reliance of the bankruptcy court's ruling, only to learn that the ruling was incorrect. In this case, the most predominant third-party is Statewide Funding, the company that seeks to refinance the Moreau's debt.

If this court refuses to grant a stay and then vacates the bankruptcy court's confirmation, Statewide Funding would be in the precarious position of having financed a debt based on arguably incorrect values. Statewide's obligations would surely be in dispute, and perhaps subject to more litigation. It is in the public's interest to avoid that tangled web. The Fifth Circuit's decision in *In re Matter of Bleaufontaine, Inc.* is particularly persuasive on this point, to the extent that it notes a " 'special need for seeking a stay when the ... impending sale of property' is not enjoined." 634 F.2d 1383, 1389–90 & n. 14 (5th Cir.1981) (quoting 9 Moore's Federal Practice ¶ 208.03, at 8–10 & 11 (2d ed. 1980)).

The Moreaus have not stated any legitimate public interest in avoiding the stay. In this court's view, the public's best interests would be served in protecting a relatively innocent, bona fide purchaser (Statewide Funding) from unnecessarily suffering through protracted litigation over its obligations in the event of a reversal.

## III. CONCLUSION

Beneficial has satisfied all four criteria for prevailing on its motion for a stay of judgment pending appeal, at least to the extent that the balance tips in Beneficial's favor. Therefore, the bankruptcy court's confirmation order is stayed pending this court's judgment on Beneficial's appeal therefrom.

IT IS SO ORDERED.