**In re John Joseph EDWARDS, Debtor.**

**Bankruptcy No. 96–17868 DWS.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Jan. 8, 1999.

---

See also 228 B.R. 552.

Kenneth A. Jacobsen, Media, PA, for Debtor.

Christine C. Shubert, Tabernacle, NJ, Chapter 7 Trustee.

Dave P. Adams, Office of U.S. Trustee, Philadelphia, PA.

## *MEMORANDUM OPINION.*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion of John Joseph Edwards ("Debtor") for Stay Pending Appeal (the "Motion") of this Court's Order dated December 15, 1998 (the "Sale Order") pursuant to Federal Rule of Bankruptcy Procedure 8005. The Sale Order approved the

sale by Christine Shubert, the Chapter 7 trustee (the "Trustee") to Richard G. Phillips ("Phillips") and Wesley Wyatt ("Wyatt") (together "Buyer") of Debtor's one-third interest in the stock of Pilot Corporation ("Pilot") and one-third interest in the Edwards Partnership (the "Partnership") (Pilot and the Partnership are together, the "Equity Interests") as well as the settlement and mutual release of claims between the estate and Phillips, Pilot and certain third parties who support the sale to Buyer (the "Claims").[1] It was accompanied by a forty page Memorandum Opinion detailing the factual and legal underpinnings of my decision. 228 B.R. 552 (Bankr.E.D.Pa.1998) (the *"Opinion"*).[2]

On December 30, 1998, I entered a procedural order directing the Trustee and Buyer to file a response to the Stay Motion and set an evidentiary hearing for January 8, 1999.[3] Having now reviewed all the pleadings and briefs submitted and considered the evidence and arguments made at the hearing, the Stay Motion will be denied for the reasons set forth below.

## DISCUSSION

■■■ Bankruptcy Rule 8005 grants me in the first instance the discretion to grant a stay pending appeal of the Sale Order.[4] The factors to be considered in determining whether to grant a stay pending appeal are (1) whether the movant has made a showing of likelihood of success on the merits of the appeal; (2) whether the movant will be subject to irreparable harm if the stay is not granted; (3) whether the granting of the stay would substantially harm other interested parties; and (4) whether the granting of the stay would serve the public interest. *In re 641 Associates, Ltd.,* 1993 WL 246024, 1993 U.S. Dist. LEXIS 8737 (E.D.Pa.1993); *In re X–Cel Constructors of Delaware, Inc.,* 76 B.R. 969, 970 (D.N.J.1987); *Pension Benefit Guaranty Corporation v. Sharon Steel Corporation (In re Sharon Steel Corporation),* 159 B.R. 730, 733 (Bankr.W.D.Pa.1993); *In re East Redley Corporation,* 20 B.R. 612 (Bankr.E.D.Pa.1982). Debtor contends that in the application of this test, the strength of any one factor may vary inversely with the strength of the remaining factors. Stay Memo at 2. While certain courts have found that an appellant's failure to persuade the court regarding any one of these factors is sufficient to deny the stay, *e.g. Blackwell v. GMAC (In re Blackwell),* 162 B.R. 117, 118 (E.D.Pa.1993), the more common approach,

---

1. The Sale Order is but one component of a larger resolution of various long standing disputes between Wyatt, Phillips and Pilot and yet other parties whose claims were not within this Court's jurisdiction. Settlement Agreement, Phillips Exhibit 1. These claims and disputes were memorialized in various pieces of litigation pending in the District Court of New Jersey, the Court of Common Pleas of Delaware County and in four adversary proceedings filed in this Court.

2. As the parties have referenced the page numbers in the *Opinion* as released by the Court, I will do likewise notwithstanding its availability on Westlaw.

3. The scheduling was done mindful of paragraph 7 of the Order approving sale procedures that requires the successful buyer to close the sale and purchase of the Equity Interests within 30 days after entry of the Sale Order. Moreover, I ordered the Trustee not to close on the sale of the Equity Interests until I disposed of the Stay Motion. As I am now denying the stay and the Movant has stated his intention to file a similar motion with the District Court, I am setting forth the basis of my decision in some detail to assist in the next level of review. I will also not release the Trustee to close the sale until January 15, 1999, the date that closing is required, in order to provide the District Court with additional time should a stay motion be filed there.

4. Bankruptcy Rule 8005 provides:

   Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may ... make any appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

   Thus, this rule supplements Rule 7062 which provides, *inter alia,* that an order authorizing a sale of property of the estate under § 363 shall be an additional exception to Rule 62 of the Federal Rules of Civil Procedure. (Rule 62 provides that a mandatory stay shall be granted if the appellant files a bond sufficient to protect the interests of adverse parties.) Debtor seeks to be granted a discretionary stay with the posting of a bond of an amount only sufficient to protect the risk to non-Pilot related creditors of losing the sale. I have previously rejected the Debtor's distinction between Pilot and non-Pilot creditors as a principled means of treating creditors under the Code. Since I am not granting a stay, however, I need not address this issue further.

**576**

as Debtor and the Trustee suggest,[5] is to balance all factors in making this determination. *E.g., In re Dakota Rail, Inc.,* 111 B.R. 818 (Bankr.D.Minn.1990); *In re Richardson,* 15 B.R. 930, 931 (Bankr.E.D.Pa.1981).

█ In applying the widely accepted test set forth above, I will distinguish the two categories of objections to my ruling that are the basis of the contemplated appeal of the Sale Order. Movant argues that I committed reversible error when I found (1) that the sale price was adequate and (2) that the Buyer acted in good faith in the course of the sale process.[6]

*Likelihood of success on the merits*

Debtor notes that a court which has rendered a decision is unlikely to find such decision likely to be overturned. Presumably if this finding was the sole requirement to securing a stay, the presentation in the first instance of a request for a stay pending appeal to the bankruptcy court could be a mere formality. According to Debtor, I am not required to find that it is likely that I committed error but merely that "the appeal presents substantial questions on which reasonable minds might differ" in order to grant the stay. Stay Motion at 3. Debtor then proceeds to analyze the factual record

against my decision to presumably support the existence of "substantial questions."

Debtor's interpretation of the proper application of the first factor is overly generous to his position, essentially reading that factor out of the test at the trial level. The authority he quotes states one proposition; his paraphrase states quite another. According to Debtor, "courts have held that where a divergence of legal authority or case law on a particular question on a particular question exists, a stay pending appeal is appropriate because the issue of the applicant's likelihood to prevail on the merits of the appeal is significant." *In re Richmond Metal Finishers, Inc.,* 36 B.R. 270, 272 (Bankr.E.D.Va. 1984). Yet a reading of his brief makes clear that it is not a divergence of legal authority or uncertainty to the case law that drives the appeal but the application of facts to the established law that is being challenged.[7] The law governing the approval of a sale of assets under § 363 of the Bankruptcy Code and the settlement of claims under Bankruptcy Rule 9019 is well developed with clear guidance and authority provided by the Third Circuit Court of Appeals.[8] Without diminishing the importance of my decision to the parties, I find no substantial questions of law presented by this appeal that would cause me to relax the application of the first factor. I believe it is sufficient, as noted

5. Buyer urges a somewhat different formulation. Arguing that all four factors must be satisfied to warrant the granting of the stay, Buyer states that it is only necessary to engage in the balancing of interests after the movant makes a threshold showing of both a strong likelihood of success on the merits and the existence of irreparable harm. Response of Appellees to Debtor's Motion for Stay Pending Appeal at 2. Without regard to whether I agree with Buyer, I will evaluate each factor given the dual objective of this memorandum, *i.e.,* to decide the pending motion and to provide a fulsome explanation of my reasoning to assist the District Court. However, I do agree with my colleague Judge Twardowski that in performing the balancing analysis, the last two elements are not of equal weight. *In re Dobslaw,* 20 B.R. 922, 924 (Bankr.E.D.Pa.1982).

6. Movant identified the issues in the Stay Motion as follows: (1) the bad faith collusive bid; (2) the failure to normalize earnings; (3) the inadequate Edwards Partnership review; (4) the wholesale failure to value the claims; (5) the trustee's conflict of interest. Issues (1) and (5) relate to the sale process whereas issues (2), (3) and (4) relate

to the sale price. In a footnote, he notes that he also intends to include in his appeal "the related issue of the Court's prior determination not to take into account the many equitable grounds that the Debtor set forth for rejecting *any* sale of his assets to Phillips, his former attorney turned nemesis." Stay Motion at 3 n. 1 (emphasis in original). Noteworthy on this point is the absence of any *evidence* in the record of facts that would make the sale to Phillips, as proposed by the Trustee, inequitable even assuming equitable grounds were the relevant standard. Notwithstanding my express invitation to Debtor's counsel to make an evidentiary record on his objection to the sale to Phillips/Wyatt, he did not do so.

7. The length of the Memorandum Opinion underscores the factually intensive nature of this contested matter.

8. *See In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir.1986) and *In re Martin,* 91 F.3d 389 (3d Cir.1996).

above, that I will weigh my view of the likelihood of success on the merits with my analysis of the other factors to determine whether the stay should be granted. In so doing, I recognize that where my factual findings are at issue, they will be reviewed for clear error and my exercise of discretion for abuse thereof. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir.1998); *In re Engel*, 124 F.3d 567, 571 (3d Cir.1997).

Beginning with the bad faith argument, I note the Debtor's request that I review his previously unreviewed Reply Memorandum [9] "as the primary body of our legal grounds for objecting to the Court's decision concerning the joint Phillips/Wyatt bid." Stay Motion at 4. I have done so and find nothing in that document that was not considered in rendering my decision. Indeed, as to one of the two points made, I agreed with the Debtor. I did not accept the Trustee and Buyer's argument that their disclosure of the Settlement Agreement alone insulated them from a finding of bad faith. *Opinion* at 564–565. Rather I noted with approval the view of the Court in *Kabro Associates v. Colony Hill Associates (In re Colony Hill Associates)*, 111 F.3d 269, 276 (2d Cir.1997), cited to me by Debtor, that "full disclosure may not always neutralize conduct that would constitute bad faith."

The second point made in the Reply Memorandum and again in the Stay Motion is the Debtor's view that there was an impermissible agreement to control the bid price. Stated in Debtor's language, the collusive facts of this case are that "the only two bidders for the bankruptcy estate's assets entered into an agreement by which one dropped its bid in exchange for consideration paid by another." Reply Memorandum at 3. The problem with that description is that it is simply

unsupported by the record. Indeed if that were the case, I would have agreed with the Debtor. Something far different happened, however. No bidder dropped out of the auction but rather two bidders presented a joint and higher bid. Nor did either Wyatt or Phillips receive consideration from the other. Rather both men (as well as certain other parties to the Settlement Agreement) received certain benefits and burdens from the Settlement Agreement. There is no evidence that any benefit was provided as consideration for "dropping" a bid. Debtor would have me take a myopic view of what transpired here, looking merely to the result, *i.e.*, the joint bid where there were previously two bidders, and concluding that the agreement to submit such a joint bid and therefore not to bid against each other was an agreement to control the sale price. Debtor appears to be now stating that I should have ignored the plain language of the Settlement Agreement which merely required Wyatt and Phillips to use their best efforts to purchase the Debtor's Equity Interests and concluded that any joint effort was collusive because, by definition, it would have involved an agreement to bid at a certain price.[10] For the reasons stated in the *Opinion* at 565–566, I concluded then and affirm now that the agreement between Wyatt and Phillips while impacting the sale price, was not intended to control it. However, as this conclusion is driven by the unique facts of this case, it is possible that an appellate court could view it differently.

There is no support, however, for the Debtor's view that the Trustee's designation of two directors to Pilot's board created an impermissible conflict that tainted the sale process.[11] Framed as a request to remove

---

9. The memorandum was not reviewed as it was not contemplated by the briefing schedule and indeed was received as the *Opinion* was being finalized.

10. The relevant provisions for bidding purposes, as noted in the *Opinion*, is the best efforts requirement, not the provision singled out by Debtor which required the Interests, if acquired, to be contributed to the new entity.

11. In the early stages of the sale process where the Phillips initial bid was conditioned on the

termination of a certain shareholders' agreement intending to disadvantage Wyatt and which the Trustee's directors had voted to support, the conflict issue was understandably raised by the Debtor and Wyatt. However, the condition to the Phillips bid was quickly withdrawn. When pressed by the Court as to whether he intended to call a conflict or allow the sale process to proceed, Debtor withdrew his objection with a typical lawyer's reservations attached. Dissatisfied with the outcome of the bidding, the conflict was reasserted as an objection to the Sale Mo-

the Trustee, presumably to position the Debtor to argue for control of the bidding should he be successful on upsetting the sale, there is also absolutely no authority, and Debtor does not suggest otherwise, that he should be allowed to manage the asset sale.[12]

Having addressed the Debtor's bad faith issues, I turn now to the purported errors in my analysis of the adequacy of the sale price. Again Debtor raises no issues that were not considered by me in rendering my *Opinion*, and based on the reasoning therein, it is my considered view that there is no likelihood of the sales price being found inadequate on appeal. One issue, however, was not specifically addressed in my decision and therefore could benefit from elaboration here. A component of Debtor's objection to the Scherf valuation was the value he placed on the Edwards Partnership Interest. The thrust of the objection is that Scherf, not being a real estate appraiser and failing to employ a real estate appraiser to assist him, could not properly render an opinion of value of the partnership which essentially functions to hold real estate. Moreover, Debtor was critical of the data that Scherf relied upon in reaching his conclusion that the Partnership Interest is worth $145,000.[13]

Debtor's challenge to Scherf's valuation methodology with respect to the Edwards real estate as well as to the Pilot stock fails for the same reason. He put on no evidence to controvert Scherf's opinions. As stated in the *Opinion*, the use of selected portions of generic treatises to cross examine a witness is far different than affirmatively proving the point. As Scherf held fast to his views,[14] his

tion. However, there is no evidence of the Trustee being involved in any way with the bidders other than to receive the bids and make her recommendation.

12. Debtor's view that his interests are the only ones to be considered because the assets have a value that should ultimately pay creditors in full is flawed. Thus, Debtor would give no value to the settlement of claims that will ensure an end to the costly and protracted litigation between the estate and various parties and allow a distribution and closure of this bankruptcy case. The Trustee, on the other hand, is a fiduciary and is charged to serve the interests of all constituents. If a trustee has a conflict, then a new trustee should be appointed after notice and hearing at which the trustee would be able to respond. As stated in the *Opinion*, that issue was not before me on an objection to the Sale Motion. Stated another way, the Debtor did not merely suggest that the sale process was tainted by the Trustee's conflict but that I should disqualify the Trustee. I found no evidence that the sale process was compromised by the Trustee, and Debtor offered none other than that she supported the sale to Wyatt/Phillip. Since I, like she, found the sale to be in good faith, it followed that I saw no flaw in her judgment. If Debtor has other facts that support his claims against the Trustee, presumably they will be addressed to the extent not precluded, in connection with his pending disqualification motion.

13. Scherf's valuation of $2,745,000 for the Equity Interests was allocated as follows: $2,600,000 Pilot stock and $145,000 Partnership Interest. Keeping in mind that the ultimate sale price for the Equity Interests was $5.2 million, it is hard to imagine how any perceived weaknesses in Scherf's methodology or expertise regarding the valuation of the Partnership Interest could have a material effect on the outcome in this case.

14. With respect to the value of the Pilot stock, Debtor contends that I "incorrectly concluded that the Trustee's valuation expert had opined against ever using normalization adjustments to value minority interests." Stay Motion at 6. I respectfully find he misses the point. Whether a normalization adjustment would *ever* be required where a minority interest was being valued, a proposition Scherf did not confirm or deny, was not relevant given, as I noted in the *Opinion*, his "unshaken" view, tested by probing cross examination, that one should not be applied under the factual hand he was dealt. *Opinion* at 567–568. Again I heard no expert who had appraised these assets tell me otherwise. Moreover, I was unimpressed with the probative value of the hypotheticals that were presented to Scherf and do not conclude from them given the untested assumptions on which they were built, that "Scherf's testimony made clear that this effect could be worth millions of dollars in value." Stay Motion at 10. A fair reading of the transcript portions cited by Debtor (N.T. 5/11/98 at 230–31, 270–74) reveals that Scherf was taken through a mathematical exercise by the examiner and refutes the basic premise upon which it is founded. Even if normalization of earnings was appropriate, there are a number of variables impacting the calculation (the assumption that you merely add back all compensation to insiders was soundly rejected) and then other discounts to be taken before reaching the value prior to calculating the Debtor's one-third share. *See* Exhibit M–3. The record on this issue is smoke and mirrors. While Debtor may contend that the stock is materially undervalued because of this factor, the absence of an expert to contradict Scherf's opinion regarding proper methodology and then perform a business valuation accordingly was fatal.

I also find no inconsistency, as charged by Debtor, in my conclusion that the Settlement

opinions became the best and only evidence of value that I received. Presumably Debtor would have me conclude from the flaws he has alleged to the appraisal that the valuation conclusion was understated. By how much is anyone's guess, and therefore whether these "defects," if ultimately proven, would have any material impact on the analysis that drove my decision is, of course, totally speculative.[15] In short, I find no reason to conclude that Debtor would have any likelihood of success on an appeal of my conclusion regarding the sufficiency of the sale price as pertains to the Equity Interests.[16] I am equally convinced for the reasons stated in the *Opinion* that the Trustee's basis for settling the claims will be similarly unavailing.[17]

### Substantial Harm to Movant

The consequence of failing to secure a stay pending appeal is potentially different for each issue category by reason of the mandate of § 363(m). That section provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Mindful of this statutory provision, the Third Circuit Court of Appeal has directed that "when a bankruptcy court authorizes a sale of assets pursuant to section 363(b), it is required to make a finding with respect to the 'good faith' of the purchaser". *Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 150 (3d Cir.1986). Absent such finding, it is universally held that an appeal will be moot if a stay is not secured. *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 650 (3d Cir.1997).

Applied to the instant facts, it is clear that the Debtor's challenge to this Court's findings of good faith will survive without regard to the securing of the requested stay, and if the Debtor's contentions are accepted by the appellate court, the sale will be overturned if it is not otherwise moot, *i.e.*, no effective relief can be granted. Since the assets being sold are stock and partnership interests and the Trustee can be ordered to withhold distribution of the sale proceeds, it is possible to

---

Agreement resolved all pending disputes over the ownership and management of Pilot and nonetheless did not provide either Wyatt or Phillips with the ability to control Pilot. The settlement provides equal ownership of Pilot Holding with a mechanism in place for a future buyout of the shareholder interests that are being established now. In the interim, disputes, recognized as inevitable because of the lack of majority control, are by agreement to be resolved by a designated arbitrator. *Opinion* at 568.

**15.** Again since the ultimate sale price was $5.2 million, Scherf's valuation would have had to have been understated by almost 50%.

**16.** Of course, the Scherf valuation is only relevant if the sale is found not be in good faith. Absent such a finding, the auction sets the value of the assets. *Opinion* at 567.

**17.** Debtor complains that I put unwarranted emphasis on certain portions of the record to the exclusion of other parts. Stay Motion at 16. The problem with this position stems from Debtor's belief that documents attached to pleadings are part of the record. He believes I should give evidentiary effect to the documents contained in a two volume binder filed with his initial Objec-

tions to the Sale Motion, as well as the documents contained in "Evidentiary Materials In Support of Objection of Chimicles, Jacobsen & Tikellis To Application of Trustee To Employ David A. Moskowitz As Litigation Consultant/Expert." (The latter application I note was withdrawn by the Trustee.) He contends my refusal to look outside the record to these materials, none of which were offered into evidence or the basis for a request for judicial notice, is unfair given my willingness to take judicial notice of the docket and my prior written opinion. I fail to understand what one thing has to do with the other. I took judicial notice of certain undisputed facts to lay a foundation for the *Opinion* that followed. No one contests the appropriateness of doing so. I refused to consider Jacobsen's testimony taken during another contested matter, *Opinion* at 569, and for the same reason I firmly believe I did not err in failing to rely on documents not made part of the record of this contested matter. The Third Circuit can not be clearer. *See In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 205 (3d Cir.1995). Moreover, the record is replete with my queries to counsel concerning the record they wished to make on this motion. For whatever reason, Debtor chose not to make a record; he cannot do so now by indirection.

return the parties to the status quo if such a ruling were made.[18]

A different situation obtains with respect to the challenges to the fairness of the price. Absent the stay, the appeal of those issues will be moot, and the Debtor will have been denied a forum for error review. Debtor contends that this fact alone is sufficient to meet his burden of establishing irreparable harm. Courts to have considered this question have concluded otherwise. *In re Dakota Rail*, 111 B.R. 818, 820 (Bankr.D.Minn.1990) (citing cases). Indeed as the Court in *In re Baldwin United Corporation*, 45 B.R. 385, 386 (Bankr.S.D.Ohio 1984) correctly observed:

> If we were to accept this argument [*i.e.*, that § 363(m) will cause them irreparable harm], then every order allowing use, sale or lease of property under § 363(b) should be stayed pending appeal, a result clearly contrary to the purpose of § 363(m).

I agree that something more than preservation of the status quo is necessary to show irreparable harm. In this case, the Debtor contends that his irreparable harm is the "sale of the fruits of the Debtor's life work." Debtor, however, ignores the reality of his legal position. After two unsuccessful attempts to reorganize his affairs, his voluntary Chapter 11 case was converted to a case under Chapter 7. Pursuant to statutory mandate a trustee was appointed and charged with the duty to liquidate property of the estate, *i.e.*, the Equity Interests. 11 U.S.C. § 704. Thus Debtor lost his ability to control the sale of "the fruit of his life's work" many months before the Sale Motion was filed. The Debtor's sole interest at this juncture is to receive from that asset the value of his equity after payment of all his creditors. As an interested party, he obviously has standing to ensure that the sale and resultant price is fair. His harm would be the failure to realize a fair price for the Equity Interests. Although contending the opposite, Debtor has given no basis for me to conclude that if he is correct that Scherf's valuation of $2,745,000 is understated, that a higher price than $5.2 million offered by Buyer can be secured for the Equity Interests. Indeed, as set forth below, I fear just the opposite will occur. Accordingly, I find that the Debtor has not met his burden of establishing irreparable harm.

### Harm to Other Interested Parties

Debtor points to the protracted nature of the dispute over ownership of Pilot as evidence that further uncertainty will not be harmful to the corporation and presumably therefore to the value of the asset being sold. He also contends that Pilot's increased profitability is indicative of its ability to prosper notwithstanding the uncertainty over its ownership. The increasing Pilot gross revenues as reflected in those portions of the 1995, 1996 tax returns and 1997 financial statement stipulated to at the hearing lend some support to this position. More significantly, the requests of Wyatt, Phillips and the franchisees, as bidders, for repeated adjournments of the sale process and the length of time the stock interests have been in dispute, bolster this conclusion. In short, I do not find harm to Pilot from staying the sale.

I do not, however, agree with Debtor with regard to the potential harm to the estate. The various bids for the Equity Interests were maintained until the final hearing on the Sale Motion. Once the Wyatt/Phillips offer was accepted and approved, all other offers terminated. There was no second bidder qualified. The Order setting sale procedures requires the successful buyer to close within 30 days after the Sale Order was entered, *i.e.*, January 15. The agreement approved by the Sale Order can be construed to allow the Buyer to walk if closing does not occur by that date.[19] Indeed that is the Buyer's position.

---

**18.** Pilot and the Edwards Partnership have been functioning with their ownership in question for many years. What this appeal is about is not ownership but the price of ownership. Debtor is betting that the price can be increased by his legal challenge to the Sale Order. Given that the one common interest of all the combatants is the prosperity of Pilot, I would expect that they would continue to operate the business much as before without regard to the continuing cloud as to ownership. These facts are markedly different than a sale of assets which cannot be unscrambled upon reversal of a sale.

**19.** Paragraph 2(c) of the Sale Agreement provides that the Closing shall be within 31 days after the entry of the Sale Order. Paragraph 2(d) requires the Trustee to deliver, free and clear of

Given the apparent desire and commitment Wyatt and Phillips have demonstrated to increasing and solidifying their equity positions in Pilot, I do not believe they will abandon their interest in acquiring Debtor's Pilot shares or the Partnership Interests although whether their interest is as acute now that they are not bidding for control is questionable. The primary and significant risk I see is that they would use the Trustee's inability to deliver the Equity Interests as contemplated in the sale agreement to renegotiate the price.[20] To a large extent that burden falls on the Debtor whose equity is at play. Arguably if he is willing to take this risk the Trustee should not be too concerned. There are, however, reasons that undercut this logic. The approved sale includes a settlement and mutual release of claims. A loss of this component of the sale if the bid were renegotiated or withdrawn would embroil the Trustee in long and costly litigation, depleting the estate and delaying its administration. At what point the increasing costs and accruing interest on the unsecured claims would threaten the full distribution to creditors the Trustee is poised to now deliver is unknown. Creditors have waited since 1996 to be paid. The administrative costs of this Chapter 7 case have been sizeable, approximately $300,000 at present. The risk to the estate of losing this sale is far greater than the loss to the Debtor of the opportunity to preserve its objection to the sale price for the speculative and remote possibility of repeating the sale process with the same parties and getting a better result.

*Public Interest*

■ I find no public interest to be served here. This is essentially a private dispute between shareholders of a closely held enterprise. This has nothing to do with Debtor's fresh start as claimed by Debtor. Stay Mo-

tion at 25. The fresh start contemplated by Congress when it crafted the Bankruptcy Code provided the debtor with a discharge and modest exemptions to start life anew. 11 U.S.C. § 522. Beyond that, Congress was concerned that the trustee promptly liquidate the assets of the estate and make a distribution to creditors. 11 U.S.C. § 704. I hardly think whether the Debtor is able to recover $2 or $3 million from the equity in his assets sold by the Trustee furthers the first policy or requires the second policy to yield. On the other hand, I do not think this case has much to do with the integrity of bankruptcy sales. The buyers are not strangers to the assets, have shown their tolerance and appetite for litigation and but for the potential harm to the estate, are merely obstructed by the Debtor's procedural parry. While each side waits for the other to blink, the estate is held hostage. It is time to free the estate from this jeopardy by letting the sale close, ensuring a settlement of the claims and payment of the substantial sale consideration to the Trustee.

## CONCLUSION

For the above reasons, the Stay Motion will be denied. Recognizing, however, that the good faith issue will not be rendered moot by the sale closing, until further Order of this Court, I will direct the Trustee to invest the sale proceeds pending the appeal (or settlement) which the Debtor has represented will be pursued on an expedited basis.[21]

An Order consistent with this Memorandum Opinion will be entered. However, as noted above, the stay previously granted to allow the Stay Motion to be prosecuted will be extended until January 15, 1999 to allow

all liens, encumbrances, restrictions and interests, the stock certificates at Closing.

20. Debtor correctly notes that there is no evidence that Buyer *will* refuse to purchase the Equity Interests if closing is deferred. Indeed Buyer may or may not. However, to place that risk upon the estate is untenable, particularly in the absence of harm to Debtor.

21. While recognizing that creditors have waited for several years to be paid, I also note that none

have appeared in this bankruptcy case. Presumably confident that they will be paid at the end of the day, there has been no issue that would have warranted their appearance. Because their payment will be assured and because the Trustee will be investing the funds so that the claims will be paid with interest, it seems appropriate to require the Trustee to withhold distribution pending the district court's review of the Stay Order. If that decision is favorable to the Trustee, I will entertain her motion to make distribution notwithstanding any further appeal.

the Debtor an opportunity to immediately present a further motion for stay to the District Court and for that Court to conduct its review.